**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **TAMI CHERRINGTON**, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**WM CORPORATE SERVICES, INC.**, a corporation,<br><br>Defendant. | Case No.: 4:26-cv-01306 |

# SECOND AMENDED COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, TAMI CHERRINGTON ("Plaintiff"), hereby brings this Second Amended Collective/Class Action Complaint against Defendant, WM CORPORATE SERVICES, INC. ("Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

2. According to its website, Defendant is "the leading provider of comprehensive waste management services in North America, providing services that range from collection and disposal to recycling and renewable energy generation.[1]"

3. In order to provide the aforementioned services, Defendant employs customer

[1] *See*, https://www.investors.wm.com/ (last visited February 12, 2026).

service representatives (hereinafter "CSRs") in brick and mortar call centers and in remote, at-home call center settings across the United States.

4. Defendant classifies its CSRs as non-exempt and tasked them with the primary job duty of providing customer service over-the-phone to Defendant's customers.

5. Defendant employed Plaintiff as an hourly CSR.

6. The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

7. One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

8. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

9. Defendant violates the FLSA by systematically failing to compensate its CSRs for work tasks completed before their scheduled shifts and during their unpaid meal periods, when they are not logged into Defendant's timekeeping system, which results in CSRs not being paid for all overtime hours worked.

---

[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call -centers (last visited February 14, 2026).

10. More specifically, Defendant fails to compensate CSRs for the substantial time they spend booting up their computer systems, programs and applications prior to the start of their shift and prior to the end of their meal periods each and every work day.

11. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

12. At the earliest time possible, Plaintiff will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employee who worked for Defendant at any time in the past three years.

**JURISDICTION AND VENUE**

13. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15. Defendant' annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16. This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Texas, employs individuals within the state of Texas, and maintains its principal place of business in the state of Texas.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant employs hourly employees in this district, conducts business in this district, and the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this district.

## PARTIES

18. Plaintiff Tami Cherrington is a resident of Phoenix, Arizona and worked remotely for Defendant as an hourly, non-exempt CSR from approximately April 2019 through March 2023. Defendant compensated Plaintiff through the payment of an hourly rate. Plaintiff Cherrington signed a consent to join this collective action, which is attached as **Exhibit A**.

19. Defendant WM Corporate Services, Inc. is headquartered in Houston, Texas with registered agents for service of process listed as: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## GENERAL ALLEGATIONS

20. Defendant pays its CSRs at varying hourly rates.

21. Defendant's CSRs are mostly employed on a full-time basis (meaning more than thirty (30) hours per week) and on some weeks work over forty (40) hours in a single week, but in other weeks work less than forty (40) hours. Prior to being hired, CSRs received an offer from Defendant that set forth the requirements of a CSR, the job duties, and the offered rate of pay.

22. Plaintiff received such an offer from Defendant to serve as a CSR, and she accepted Defendant's offer with the understanding that her base wage rate would be paid as promised.

23. Plaintiff performed by carrying out her job duties and responsibilities. More specifically, Plaintiff provided customer service to Defendant's customers via inbound calls, and Plaintiff utilized Defendant's computer systems to track all events and outcomes of her customer service interactions. Plaintiff additionally performed the required unpaid off-the-clock work

explained below.

24. Once hired, Defendant provides all CSRs, like Plaintiff, with training on how to carry out their day to day job duties, including how to load and log into Defendant's computer systems, programs and applications at the beginning of the day and prior to the end of their meal periods. The training Defendant's CSRs receive is substantially, if not entirely, the same and all CSRs are subject to the same and/or substantially similar policies.

25. Plaintiff and other similarly situated CSRs are instructed to be call ready the moment their scheduled shift starts. This requires Defendant's CSRs to be logged into and have loaded all of the essential computer systems, programs and applications prior to the start of their shift, so they could be prepared to take calls the moment their shift began. Additionally, Defendant's schedule adherence metrics track the amount of time a CSR was clocked in, but unavailable to take calls. The time spent clocked in while unavailable to take calls counts against the CSRs' schedule adherence. Defendant enforces these policies and procedures by routinely evaluating, and at times disciplining, CSRs based on schedule adherence metrics that track how closely the CSR follows his/her schedule and the amount of time CSRs are clocked in while unavailable for calls.

26. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other CSRs.

27. In order to perform their job duties, Plaintiff and Defendant's CSRs are required to utilize a computer and a variety of essential and indispensable computer systems, programs and applications.

28. All of Defendant's CSRs use the same or similar computer systems, programs and applications in the course of performing their job responsibilities. These computer systems,

programs and applications are an integral and an important part of the CSRs' work and they cannot perform their jobs without them.

29. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre- and mid-shift work off-the-clock.

30. Plaintiff and other similarly situated CSRs are required to start-up and log into these various computer systems, programs and applications off-the-clock (prior to the start of their scheduled shift) to avoid running afoul of Defendant's schedule adherence metrics and so they have access to information necessary to field customer queries the moment their scheduled shift begins.

31. The pre-shift start-up and log-in process takes substantial time on a daily basis with said time ranging from fifteen (15) to twenty (20) minutes per day, and even longer on days when Defendant's computer network and/or programs are not working properly.

32. Plaintiff and Defendant's CSRs complete this process before each and every shift and before they begin fielding customer queries.

33. The unpaid off-the-clock work performed prior to each shift by Plaintiff and other CSRs is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

34. Similarly, Defendant's CSRs, including Plaintiff, also performed work off-the-clock mid-shift when they are required to return to their work-stations before the end of their meal periods to log into the computer systems, programs and applications so that they could continue taking calls immediately at the conclusion of their meal period.

35. The mid-shift log-in process takes substantial time on a daily basis with said time

averaging (5) minutes per day.

36. Plaintiff and Defendant's CSRs complete this process during each meal period prior to the conclusion of their unpaid meal period.

37. The unpaid off-the-clock work performed mid-shift by Plaintiff and other CSRs is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

38. As a result of the pre- and mid-shift off-the-clock work described herein, Plaintiff and other CSRs are unlawfully deprived of approximately twenty (20) to twenty-five (25) minutes of compensation every day.

39. The pre- and mid-shift off-the-clock time Plaintiff and all other CSRs spend booting-up/logging into the computer systems, programs and applications directly benefits Defendant and is integral and indispensable to the CSRs' job responsibilities.

40. At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre- and mid-shift activities; however, Defendant fails to do so and fails to compensate Plaintiff and all other CSRs for the off-the-clock work they perform, thus breaching its contracts with the CSRs.

41. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

42. Despite knowing Plaintiff and all other CSRs perform the pre- and mid-shift work, Defendant fails to make any effort to stop or disallow it and instead suffers and permits it to happen.

43. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs log into the computer systems, programs and

applications each day, along with the amount of time for which the CSRs were actually compensated.

44. Because Defendant requires its CSRs, including Plaintiff, to perform pre- and mid-shift shift work off-the-clock, the amount of time for which Defendant compensates the CSRs (including the hours reflected on the CSRs' paystubs) is an inaccurate representation of the total amount of time CSRs spend working for Defendant.

**A. <u>Defendant Benefitted from the CSRs' Off-the-Clock Work</u>**

45. At all relevant times, Defendant required and directly benefitted from the off-the-clock work performed by Plaintiff and all other CSRs in connection with the pre- and mid-shift activities described above.

46. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other CSRs.

47. At all relevant times, Defendant has been able to track the amount of time Plaintiff, and all other CSRs spend in connection with the pre- and mid-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Representatives for the off-the-clock work they performed.

48. Defendant expressly trained and instructed Plaintiff and all other CSRs to perform these off-the-clock work activities when they were not clocked into Defendant's timekeeping system.

49. At all relevant times, Defendant's policies and practices deprived Plaintiff and the CSRs of wages owed for the pre- and mid-shift activities they performed.

**<u>COLLECTIVE ACTION ALLEGATIONS</u>**

50. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf

of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant at any time during the three years preceding the date of an order from this Court granting conditional certification up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

51. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

52. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

53. Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

54. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

55. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and

b. Willfully failing to record all of the time that its employees, including Plaintiff

and the members of the FLSA Collective, worked for the benefit of Defendant.

56. Defendant is aware, or should have been aware, that federal law requires it to pay Plaintiff and the proposed FLSA Collective members an overtime premium for all hours worked in excess of forty (40) per workweek.

57. Defendant's unlawful conduct has been widespread, repeated, and consistent.

58. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

59. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre- and mid-shift off-the-clock work owed to each employee – does not vary substantially among the proposed FLSA Collective members.

60. Upon information and belief, there are many similarly situated current and former CSRs who have been underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

61. Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes thousands of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

62. All of the estimations discussed herein will be refined after class discovery is completed.

63. The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

64. Plaintiff re-alleges and incorporates all previous paragraphs herein.

65. At all times relevant to this action, Defendant has been subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

66. At all times relevant to this action, Defendant has been engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

67. At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

68. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

69. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

70. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

71. At all times relevant to this action, Defendant required Plaintiff and all the proposed

FLSA Collective members to perform pre- and mid-shift work off the clock, every shift, and Defendant failed to pay these employees the federally mandated overtime compensation for all work performed.

72. The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

73. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207.

74. Defendant's violations of the FLSA have been knowing and willful. Defendant has known or could have determined how long it takes its CSRs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for these work activities, but did not.

75. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## <u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed

FLSA Collective members and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

c. An Order designating the Plaintiff as representative of the FLSA Collective, and undersigned counsel as Class counsel for the same;

d. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

e. An Order declaring Defendant's violations of the FLSA were willful;

f. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collectivethe full amount of damages and liquidated damages available by law;

g. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

h. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

i. An Order awarding such other and further relief as this Court deems appropriate.

Dated: July 20, 2026

Respectfully Submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (Mich. Bar No. P64371)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com

*Counsel for Plaintiff and the Putative Collective/Class*

**JURY DEMAND**

Plaintiff, TAMI CHERRINGTON, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect

to the above-entitled cause.

Dated: July 20, 2026 Respectfully Submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (Mich. Bar No. P64371)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com

*Counsel for Plaintiff and the Putative Collective/Class*

**CERTIFICATE OF SERVICE**

I certify that on July 20, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Kevin J. Stoops*
Kevin J. Stoops